UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN E. M.,[1]<br>       Plaintiff,<br>   v.<br>KILOLO KIJAKAZI,<br>       Defendant. | Case No. 20-cv-07295-SK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 18, 21 |

This matter comes before the Court upon consideration of the motion by Plaintiff Sean E. M. ("Plaintiff") for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, and relevant legal authority, and the record in the case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-motion for summary judgment for the reasons set forth below. The Court REMANDS this matter for further proceedings.

**BACKGROUND**

Plaintiff was born on January 28, 1991. (Administrative Record ("AR") 26.) On December 19, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging she/he was disabled starting on May 14, 2013. (AR 15.)

On October 21, 2019, Plaintiff, accompanied by counsel, testified at a hearing before the Administrative Law Judge ("ALJ"). (*Id*.) Vocational expert Thomas G. Linvill also testified at

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the hearing. (*Id*.)

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017 and that Plaintiff has not engaged in substantial gainful activity since May 14, 2013, the alleged onset date. (AR 18.) The ALJ found that Plaintiff has the following severe impairments: history of traumatic brain injury, vertigo and anxiety disorder. (*Id*.) The ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment under 20 C.F.R. §§1520(d), 404.1525, 416.920(d), 416.925, and 416.926. (*Id*.) The ALJ concluded that Plaintiff has the residual functional capacity to perform light work except never to clime ladders, ropes or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, and that Plaintiff must avoid all exposure to hazards such as operational control of dangerous moving machinery, and avoid unprotected heights. (*Id*. at 20.) The ALJ further found that Plaintiff could not drive and the was limited to simple, routine and repetitive, tasks, working with only occasional changes in the work setting and no face-to-face public interaction and no tandem tasks. (*Id*.) The ALJ found that Plaintiff is able to perform past relevant work, and, in the alternative, found that there are significant jobs in the national economy that Plaintiff can perform. (*Id*. at 26-27.) The ALJ concluded that Plaintiff is not disabled. (*Id*. at 27.)

## ANALYSIS

**A.    Plaintiff's Challenge to Appointment and Actions by Commissioner of the Social Security Administration.**

Plaintiff argues that the Court should reverse the decision of the ALJ because the appointment of the Commissioner of the Social Security Administration violated the Constitution. Specifically, Plaintiff argues that, because the statute appointing the Commissioner provides that the President may remove the Commissioner of the SSA only for neglect of duty or malfeasance in office, the appointment violates Article II of the Constitution and thus requires reversal of any decision made under the Commissioner's tenure. To understand this argument, a fuller explanation of the structure of the Social Security Administration, the history of the President's

power, and the Supreme Court's interpretation of that power is necessary.

### 1. Structure of Social Security Administration and Appointments at Issue.

The Commissioner of the Social Security Administration is appointed by the President and confirmed by the Senate. 42 U.S.C. §902(a)(1). "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). The Commissioner concedes that the statute regarding removal violates the separation of powers. (Dkt. No. 21, at page 2; *see also Constitutionality of the Comm'r of Soc. Sec's Tenure Prot.*, 2021 WL 2981542, at *7 (O.L.C. July 8, 2021).

Nancy Berryhill became Acting Commissioner on January 27, 2017 and served until June 17, 2019; Andrew Saul became Commissioner on June 17, 2019 and served until July 9, 2021; and Kilolo Kijakazi became Acting Commissioner on July 9, 2021 and serves currently.[2]

### 2. History of Removal Provisions.

Article II provides that the "executive Power" is vested in the President, who must "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; Art. II, § 3. "The entire executive power is vested in the President alone." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197, 207 L. Ed. 2d 494 (2020). Because one person alone cannot fulfill the executive power, the President can act through his executive officers. *Id*. (internal citation omitted). The Supreme Court confirmed the power of the President to select and remove an executive officer as part of the executive power under Article II in *Myers v. United States*, 272 U.S. 52 (1926).

In *Seila Law*, the Court held that the plaintiff, who was challenging a civil investigative demand issued from the agency's director, had standing. *Id*., 140 S. Ct. at 2196 ("In the specific context of the President's removal power, we have found it sufficient that the challenger sustains injury from an executive act that allegedly exceeds the official's authority.") (internal citation and quotation marks omitted). On the merits, the Court held that Article II confers upon the President the power to remove from office – without restriction – the head of an independent agency that

---

[2] The Court takes judicial notice of these facts. https://www.ssa.gov/history/commissioners.html; https://www.ssa.gov/agency/commissioner/.

"wields significant executive power" and that "is run by a single individual." *Id*. at 2192, 2197. "The President cannot delegate ultimate responsibility or the active obligation to supervise that goes with it, because Article II makes a single President responsible for the actions of the Executive Branch." *Id*. at 2203. Vesting significant governmental power in the hands of the Director of the Consumer Financial Protection Bureau ("CFPB"), who was accountable to no one because of the limitations on the President's power of removal, violated the structure of the Constitution. *Id*. The Court thus found that the limits on the President's power of removal violated the separation of powers and was unconstitutional. *Id*. at 2192, 2204.

However, the Court also held that the provision regarding removal was "severable from the other statutory provisions bearing on the CFPB's authority." *Id.* at 2211. Therefore, the statutory provisions bearing on the agency's structure and duties remained in effect, without the limits on the President's removal of the agency director. *Id*. at 2192, 2209.

In 2021, the Supreme Court again took up the issue of separation of powers when a statute creates an executive agency with a single person as the head, removable only "for cause." The Supreme Court focused on the issues of standing and remedies for a violation. *Collins v. Yellen*, 141 S. Ct. 1761, 210 L. Ed. 432 (2021). In *Collins*, the Court found that the plaintiffs had standing to challenge the agreement the Director of the Federal Housing Finance Agency ("FHFA") made, which allegedly transferred the value of the plaintiffs' property rights to the government. *Id*. at 1779. The Court clarified that, for purposes of traceability, the relevant inquiry was whether the plaintiff's injury could be traced to the defendant's alleged unlawful conduct and that there was no requirement to trace the injury to the challenged provision regarding removal. *Id*.; *see also id*. at 1788, n. 24 ("a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer. . . ).

On the merits, the Court again held that an independent agency with a single Director whom the President could remove only for cause violated the separation of powers. *Id*. at 1770, 1783. The Court then addressed the specific request for relief, which was retrospective only because of a later change in the challenged agreement. *Id*. at 1787. The Court rejected the claim

4

that all actions taken by a Director who was subject to unconstitutional removal limitations were void *ab initio*. *Id*. The Court reasoned that the Directors at issue were properly *appointed*; the statute only unconstitutionally limited the President's power to *remove* those Directors. *Id*. Therefore, there was no reason to deem the actions taken by those Directors as void. *Id*.; *see also id*. at 1788 ("there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office").

Nevertheless, the Court held open the possibility that the unconstitutional removal statute might cause "compensable harm" and gave two examples: (1) a situation in which the President attempted to remove a Director but a lower court prevented him from doing so, or (2) a situation in which the President publicly expressed "displeasure with the Director and asserted that he would remove the Director if the statute did not stand in the way." *Id*. at 1789. The Court remanded the dispute about what relief, if any, should be awarded to the lower courts. *Id*.

### 3. Analysis

#### i. Standing.

As a threshold matter, the Court must first determine whether Plaintiff has standing to challenge the alleged unlawful removal provision. Defendant does not contest Plaintiff's standing. (Dkt. No. 31.) However, even if the parties do not challenge standing, "[f]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles,* 279 F.3d 862, 868 (9th Cir.2001) (citations omitted). The Court, thus, has "both the power and the duty to raise the adequacy of [Plaintiff's] standing *sua sponte*."

To establish Article III standing, a plaintiff must show that he or she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (alterations and internal quotation marks omitted). As discussed above, "for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks and citation omitted).

Plaintiff argues that, because the ALJ's authority is delegated by the Commissioner, the

5

ALJ's decision should be treated as one by the Commissioner. Plaintiff does not cite to any authority to support his position. The majority of courts to examine this issue have concluded that a party similarly situated to Plaintiff lacks standing because the plaintiffs did not allege facts to support a finding that their injuries, the denial of disability payments, could be traced to the conduct of the Commissioner of the Social Security Administration. *See*, *e.g.*, *Miley v. Comm'r of Soc. Sec.*, 2021 WL 6064754, at *9 (N.D. Ohio Dec. 22, 2021) (rejecting argument that plaintiff had standing because her administrative proceedings were conducted pursuant to policies and regulations implemented by the Commissioner, finding that plaintiff lacked standing absent a harm traceable to an unlawful action by the Commissioner); *Melvin S. v. Comm'r of Soc. Sec.*, 2021 WL 6072564, at *10-11 (W.D. Wash. Dec. 22, 2021); *Rivera-Herrera v. Kijakazi*, 2021 WL 5450230, at *8 (E.D. Cal. Nov. 22, 2021); *Catherine J.S.W. v. Comm'r of Soc. Sec.*, 2021 WL 5276522, at *7 (W.D. Wash. Nov. 12, 2021) (rejecting argument that "all of the ALJ's who conducted hearings would have been biased because they were tainted by the alleged separation of powers violation"); *Amanda B. v. Comm'r of Soc. Sec.*, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *Brinkman v. Kijakazi*, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021); *but see Dixie C. v. Kijakazi*, 2021 WL 4822838 (N.D. Tex. Sept. 20, 2021) (finding plaintiff denied disability benefits had standing to bring a constitutional claim).

The Court concurs with the weight of authority and finds that Plaintiff has no standing here. In contrast to *Seila Law* and *Collins*, Plaintiff does not challenge actions by the Commissioner and instead challenges the ALJ's denial of his claim for disability benefits and the Appeals Council's affirmation of that denial. Simply put, Plaintiff has not shown an injury in fact which is fairly traceable to any allegedly unlawful conduct by the Commissioner. Therefore, Plaintiff lacks standing to challenge the constitutionality of the limits on the Commissioner's removal.

### ii. Compensable Injury.

Alternatively, even if Plaintiff could show standing to raise this constitutional issue, he still fails to show any compensable injury. Where statutes contain improper restrictions on the President's removal power, the Supreme Court made clear that such provisions are severable from the other governing statutes for the agency. *Seila Law*, 140 S. Ct. at 2209, 2211. Therefore, "unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office. . . ." *Collins*, 141 S. Ct. at 1788, n. 23 (rejecting arguing that plaintiff was entitled to relief from actions taken by Director subject to unlawful removal provision). As a result, a plaintiff must demonstrate the unconstitutional provision inflicted "compensable harm" to establish an entitlement to relief. *Id*. at 1788. Plaintiff must show a link between the denial of his claim for disability benefits and the alleged unconstitutional removal provision. *Id*. at 1788-89; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (refusing to unwind the ALJ's decision where there was no showing that the alleged unlawful removal provision "tainted" the ALJ's decision); *Bayview Loan Servicing, LLC v. 6364 Glenolden St. Tr.*, 2021 WL 4938115, at *2 (9th Cir. Oct. 22, 2021) (unpublished) (explaining that plaintiff could recover damages for alleged unlawful removal provision under *Collins* "only by causally linking a specific, tangible harm to the for-cause removal provision").

Plaintiff argues that he was harmed because the ALJ's delegation of authority came from Commissioner Saul, who in turn, "had no constitutional authority." (Dkt. No. 18 at page 23.)[3]

---

[3] In contrast, the Commissioner argues the ALJ who denied Plaintiff's disability benefits claim was appointed by an *Acting* Commissioner who was not subject to the restricted removal provision. Some courts have concluded that the removal restriction does not apply to an Acting Commissioner. *See*, *e.g.*, *Hutchens v. Kijakazi*, 2021 WL 5834409, at *9 (M.D.N.C. Dec. 9, 2021) (finding that the removal restriction in Section 902(a)(3) did not apply to an Acting Commissioner and distinguished cases which found otherwise because they were addressed in the procedural posture of a motion to dismiss); *see also Lisa Y. v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ---, 2021 WL 5177363, at *5 n. 1 (W.D. Wash. Nov. 8, 2021); *Standifird v. Kijakazi*, 2021 WL 5634177, at *4 (S.D. Cal. Dec. 1, 2021); *Alice T. v. Kijakazi*, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *but see Sylvia A. v. Kijakazi*, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021); *Albert v. Kijakazi*, 2021 WL 3424268, at *3 (D. Alaska Aug. 5, 2021); *Tafoya v. Kijakazi*, 2021 WL 326940, at *5 (D. Col. Jul. 29, 2021). The Court need not address this argument about whether

Similarly, in his reply, Plaintiff breaks this argument into six smaller derivative arguments regarding the ALJ's and the Appeals Council judge's purported lack of authority to adjudicate Plaintiff's disability benefits because the Commissioner lacked lawful authority to delegate to them. (Dkt. No. 26 at pages 11-16.) However, the holdings in *Seila Law* and *Collins* make clear that an alleged unconstitutional removal provision is severable and does not undermine the authority of the Commissioner and the SSA to function. *See Seila Law*, 140 S. Ct. at 2209 ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction."); *Collins*, 1788, n. 23 ("unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office. . . ."). District courts have similarly rejected such arguments by plaintiffs contending that the ALJ's denials of their disability benefits were unauthorized or tainted by the alleged unconstitutional removal provision. *Lisa Y.*, --- F. Supp. 3d ---, 2021 WL 5177363, at *6-7 (based on *Seila Law* and *Collins*, rejecting argument that removal clause rendered SSA's structure unconstitutional and the Commissioner without any authority to delate to the ALJ and Appeals Council); *Nudelman v. Comm'r of Soc. Sec. Admin.*, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022) (rejecting argument that a "constitutional taint" flowed from the alleged unconstitutional removal provision); *Hutchens*, 2021 WL 5834409, at *11 ("Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional . . . the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office.") (citation omitted); *Catherine J.S.W.*, 2021 WL 5276522, at *7-8 (rejecting argument that the ALJ's who conducted hearings were tainted by the alleged separation of powers violation).

Plaintiff was required, but failed, to show that the alleged unconstitutional removal provision caused him compensable harm. *See Lisa Y.*, --- F. Supp. 3d ---, 2021 WL 5177363, at

---

the Acting Commissioner operates under an invalid provision for removal because Plaintiff does not show that the removal provision – whether applicable to an Acting Commissioner or Commissioner appointed by the President and approved by the Senate – causes the harm he claims.

8

\*7 ("because there is no evidence, the former President sought to remove Commissioner Saul, there is no connection between § 902(a)(3)'s removal clause and possible harm the removal clause might have caused Plaintiff."); *Perez-Kocher v. Comm'r of Soc. Sec.*, 2021 WL 6334838, at \*4-5 (M.D. Fla. Nov. 23, 2021) (no showing of compensable harm where plaintiff did not allege any direct action by former Commissioner Saul or any involvement, or even awareness, by the former President of the ALJ's decision); *Kathy R v. Kijakazi*, 2022 WL 42916, at \*4-5 (D. Me. Jan. 5, 2022); *Hutchens*, 2021 WL 5834409, at \*6 (no requisite link because plaintiff could not show that the Commissioner's statutory tenure protection affected the ALJ's determination of his disability benefits); *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions – which would not concern the President at all – would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Plaintiff here similarly failed to show that the former President sought to remove former Commissioner Saul or that either a Commissioner or the President was involved or even aware of her disability benefits claim. Therefore, he "fail[ed] to show how or why § 902(a)(3)['s] removal clause possibly harmed [him]." *Lisa Y.*, --- F. Supp. 3d at ---, 2021 WL 5177363, at \*7.

Finally, as other courts have noted, the nature of district courts' review of social security decisions provides another hurdle to demonstrating the requisite link between the removal provision and any compensable harm. *See Brand v. Kijakazi*, No. 2:20-CV-02219-NJK, --- F. Supp. 3d ---, 2021 WL 5868131, at \*5-6 (D. Nev. Dec. 10, 2021); *see also Sarah H. v. Comm'r of Soc. Sec.*, 2021 WL 5770269, at \*5 (W.D. Wash. Dec. 6, 2021); *Brinkman*, 2021 WL 4462897, at \*2 ("Plaintiff has not shown that whether the President could remove the SSA Commissioner without limitations . . . impacted the independence of the ALJ or his decision in Plaintiff's case. It is well settled that the ALJ must exercise his independent judgment on the evidence before him") (internal quotation marks and citations omitted). Courts review the administrative record and the ALJ's decisions. Based on their review, courts determine whether the ALJs decisions were supported by substantial evidence and free of legal error and either affirm or reverse the ALJ's conclusions, irrespective of the statutory removal provision. The review by district courts

1   thus precludes any possibility that the statutory removal provision causes claimants such as
2   Plaintiff any harm. Accordingly, even if Plaintiff had standing to raise this constitutional issue, he
3   fails to show, as required, that the alleged unconstitutional removal provision caused *him* any
4   compensable harm. Therefore, his request for a new hearing based on his constitutional challenge
5   fails.

### B.      Plaintiff's Merits Challenge to the ALJ's Decision.

Plaintiff challenges the decision of the ALJ on several grounds. A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve

1  months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's
2  impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of
3  impairments presumed severe enough to preclude work), benefits are awarded without
4  consideration of the claimant's age, education, or work experience. 20 C.F.R. § 20 C.F.R.
5  404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the
6  ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC")
7  based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. §
8  416.920(e). The RFC measurement describes the most an individual can do despite his or her
9  limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work,
10 benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work,
11 the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

### 1. The ALJ Failed to Justify the Decision to Give Treating Provider Ellen Weiss's Opinion Little Weight.

The ALJ gave little weight to treating provider Ellen Weiss, M.D., who had treated Plaintiff since 2013 and who completed an assessment of Plaintiff in a form dated October 23, 2019. (AR 953.) Weiss had seen Plaintiff one to eight times a year since 2013. (AR 953.) She opined that "medications help anger & mood, but ongoing symptoms despite this." She opined that Plaintiff has poor comprehension, is "somewhat disheveled," has "difficulty" in "thought and organization, and has a poor memory. She labeled his prognosis as "permanent." In a form, she checked 20 categories of "signs and symptoms," including but not limited to "[i]mpairment in impulse control," "[g]eneralized persistent anxiety," "[m]ood disturbance," "[d]ifficulty thinking or concentrating," "[p]ersistent disturbances of mood or affect," "[c]hange in personality,"

11

"[p]aranoid thinking or inappropriate suspiciousness," "[r]ecurrent obsessions or compulsions which are a source of marked distress," "[s]eclusiveness or autistic thinking," "[e]motional withdrawal or isolation," "[p]sychological or behavioral abnormalities associate with a dysfunction of the brain, with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities," "[i]llogical thinking," "[p]athologically inappropriate suspiciousness or hostility," "[s]leep disturbance," "[o]ddities of though, perception, speech or behavior," "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." (AR 954.)

Weiss also found "no useful ability to function" in two categories: the ability to maintain "regular attendance and be punctual within customary, usually strict tolerance" and the ability to complete "a normal workday and workweek without interruptions from psychologically based symptoms." (AR 955.) Weiss found that Plaintiff was "unable to meet competitive standards in six areas: the ability to work in coordination with or proximity to others without being unduly distracted, the ability to make simple work-related decisions, the ability to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions ns and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in a routine work setting, and the ability to deal with normal work stress. (AR 955.) Weiss found that Plaintiff is "seriously limited" in many categories, including but not limited to the abilities to remember work-like procedures, maintain attention for a two-hour segment, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, understand, remember and carry out detailed instructions, set realistic goals or make plane independently of others, and deal with stress of semiskilled or skilled work, interact appropriately with the general public, maintain socially appropriate behavior. (AR 955-56.) Weiss found that Plaintiff would be absent more than four days per month. (AR 957.)

The Ninth Circuit "developed standards that guide the analysis of the ALJ's weighing of medical evidence." *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008). The weight given to medical opinions depends in part on whether they are offered by

12

treating, examining, or non-examining (reviewing) professionals.[4] *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When weighing the opinions of different physicians, "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, the opinions of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). Treating physicians are afforded greater weight because they are in a better position to know and observe the patient as an individual. *Lester,* 81 F.3d at 830. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. *See Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. *Id.* The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. 20 C.F.R. § 416.927(c)(3)-(6). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). The Ninth Circuit has held that an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). An ALJ errs when the ALJ rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical

---

[4] The Commissioner refers to "new regulations" regarding assessment of medical opinions (Dkt. No. 21 at page 16), but, because Plaintiff filed his claim in 2016, the "new regulations" do not apply. *See*, *e.g.*, *H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (citation omitted) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017).

13

1 opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a
2 substantive basis for his conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).
3 An ALJ is required to provide a "detailed and thorough summary of the facts and conflicting
4 evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d
5 664, 675 (9th Cir. 2017) (internal citation and quotation omitted).

6 Here, the ALJ gave reduced weight to Weiss's opinion that Plaintiff would likely miss
7 more than four days of work in a month because the opinion is "inconsistent with [Plaintiff's]
8 normal mental status examinations" and "inconsistent with [Plaintiff's] ability to work." (AR 24.)
9 This two-sentence assessment does not meet the standard to reject Weiss's opinion, as set forth in
10 *Trevizo* and *Garrison* above. There is no explanation for the findings by other medical providers
11 that Plaintiff is "normal." The ALJ cited the examination by Tania Shertock, Ph.D., who
12 examined Plaintiff on August 12, 2017. (AR 23 (citing AR 619-623).) However, Shertock never
13 referred to Plaintiff as "normal" overall. Shertock recounted Plaintiff's history of a traumatic
14 brain injury resulting from an accident when Plaintiff, as a 12-year-old, was on his bike and hit by
15 a car. (AR 619.) Shertock noted that Plaintiff was "normal" in some areas such as speech,
16 perception, and "insight/judgment" but also noted that he had moderate impairments in many
17 areas. (AR 620-22.) The ALJ also cited the consultative examiners J. McWilliams, Ph.D., and
18 Scott F. Kaper, Ph.D., who assessed Plaintiff's abilities in general but also did not describe him as
19 "normal." (AR 69,105.) None of the other treating medical providers specifically rebutted
20 Weiss's opinion that Plaintiff would likely miss four days a month of work.

21 Finally, the ALJ cited some of the medical records from Plaintiff's treatment from 2014 to
22 2018. Although the ALJ summarized the treatment records (AR 21 – 22), the ALJ did not explain
23 how those treatment records undermined Weiss's opinion. This summary does not satisfy the
24 requirement of a detailed and thorough explanation for rejecting the opinion.

25 The rejection of Weiss's opinion was not harmless, as the Vocational Expert testified that a
26 missing work two or three times a week on an ongoing basis would "preclude all work." (AR 52.)
27 A court "may not reverse an ALJ's decision based on account of an error that is harmless. *Molina*
28 *v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citation omitted). A court is precluded

14

from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Stout*, 454 F.3d at 1056 (holding an ALJ's failure to consider and comment upon uncontradicted lay testimony was not harmless error). A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055. The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Here, the error was not harmless because, had the ALJ accepted Weiss's opinion, the only finding possible is that there are no jobs available in the national economy that Plaintiff could perform.

### 2. The ALK Erred in Assessing Plaintiff's Credibility.

Plaintiff argues that the ALJ erred in assessing his statements about his symptoms. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722. "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*. In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted). The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning

Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  If the ALJ supports his credibility determination with substantial evidence in the record, the Court may not "to second-guess that decision."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for the reasons explained in this decision."  (AR 25.)  The ALJ then discussed evidence that supported this finding:  Plaintiff's activities of daily living in participating in sports, living with a girlfriend, taking public transportation, and talking on the phone with friends and family, shopping for groceries, drawing, fishing and camping; his attempts to find a new job; his improvement of symptoms with medication; his work after the alleged onset date; and his attendance at community college with grades of A's and B's.  (AR 25-26.)  However, simply stating that evidence did not support Plaintiff's testimony about the intensity, persistence and limiting effects" is a conclusion that does not meet the standards required to reject that testimony.  Here, Plaintiff testified that his stress was so overwhelming that it led to nausea and vomiting once or twice a week and that recovery took 24 to 36 hours.  (AR 41-44.)  He testified that he could participate in activities of daily living when he was not suffering from these symptoms. (AR 44-45.)  Plaintiff also testified that his other mental health issues could last for months and that he could only work if there were no co-workers and no boss.  (AR 46-47.)  He also testified that he could attend college full-time but not consecutively; he could not attend "consecutive semesters."  (AR 41-42.)  Plaintiff testified that he was not able to keep his jobs because he had a physical and loud altercation with his boss and that he could work in construction "one day at a time with large breaks in between."  (AR 40-41.)

The ALJ did not identify the evidence that undercut the specific evidence that Plaintiff's debilitating symptoms of nausea and vomiting occurred once or twice a week and Plaintiff's

16

explanation that he could engage in the activities the ALJ cited above but only sporadically. Given Weiss's opinion that Plaintiff would likely miss four days a week in a month, the ALJ's rejection of Plaintiff's testimony about the number of times his symptoms were debilitating was not harmless.

### 3. Remand to Determine Benefits Is Appropriate Remedy.

Here, the appropriate remedy is to remand to determine benefits. "Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal citation and quotation marks omitted). However, the Ninth Circuit has made clear that courts are "free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits" in appropriate circumstances. *Id*. "[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the" testimony or medical opinion evidence "were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." *Id.* at 1019-20 (quoting *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1401 (9th Cir. 1988)).

The Ninth Circuit has developed the following "three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*. at 1020.

The record here is complete. Plaintiff has been examined by numerous medical professionals, and his medical records are complete. The ALJ failed to provide a legally sufficient reason for rejecting both Weiss's opinion and Plaintiff's testimony, and that evidence, if credited as true, would require a finding that Plaintiff is disabled.

17

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment.  The Court REMANDS for a determination of benefits.

**IT IS SO ORDERED**.

Dated: January 28, 2022

_____
SALLIE KIM
United States Magistrate Judge